**UNITED STATES of America ex rel. Paul MARTIN, Petitioner,**

v.

**Hon. John L. ZELKER, Warden, Green Haven Prison, Stormville, New York, Respondent.**

**No. 71 Civ. 710.**

United States District Court, S. D. New York.

Sept. 10, 1971.

---

Paul Martin, pro se.

Louis J. Lefkowitz, Atty. Gen., State of New York by John G. Proudfit, Asst.

Atty. Gen., New York City, for respondent.

MOTLEY, District Judge.

Petitioner claimed in a post conviction proceeding in the Supreme Court of New York, Columbia County (Christiana, J.), that the plea of guilty which he entered on March 23, 1964, to murder in the second degree had been the result of coercion on the part of his court appointed counsel.[1] Petitioner and his codefendant, Nathan Giles, had been charged with first degree murder in connection with the death of a woman which occurred on March 3, 1963 during the course of a robbery committed by both defendants. Giles also pleaded guilty on March 23, 1964. Petitioner and Giles each were 17 years old at the time. During the voir dire in connection with Giles' plea, Giles admitted, without equivocation, that it was he who stabbed the robbery victim after she screamed. Petitioner, Paul Martin, admitted upon his voir dire that he and Giles went to the robbery victim's apartment at 11 West 180th Street in New York City on March 3, 1963 and robbed the victim.[2] He further admitted that the victim screamed and that Giles stabbed her. In answer to the questions whether he had been coerced or threatened with respect to his plea, petitioner replied in the negative.

Petitioner pleaded guilty just as the trial of his case commenced. This was more than a year after his arrest. Before pleading, petitioner wrote out, at the suggestion of counsel, a statement of what occurred at the time of the felony murder and his part therein. He testified at a hearing before Judge Christiana that he wrote only what his lawyer told him to write; that from the beginning one of his court appointed counsel, Mr. Alfred Norick, advised him that he had no defense; and that he should plead guilty to a lesser offense. Peti-

1. Petitioner upon being brought back to the trial judge for resentencing made a motion to set aside his guilty plea on the ground indicated.

2. Petitioner made a motion to transfer the trial of the case from New York County which was granted and the case transferred to Columbia County.

tioner further testitifed that to his knowledge neither of his court appointed trial counsel ever made any investigation of his story as he had told it to them, although he had told them on numerous occasions that he was innocent. He testified that his lawyers never discussed the case with him and never advised him what evidence they believed the state had other than a confession made at the time of his arrest. He also testified that just before the trial commenced, Mr. Norick advised him that he had secured a commitment that if petitioner pleaded guilty to second degree murder he would receive a sentence of 20 to 25 years and urged him to plead guilty.

Petitioner was sentenced to the mandatory period of 20 years to life for second degree murder. He now claims that he did not know at the time of his plea that the minimum mandatory penalty for murder in the second degree was 20 years to life and that his lawyer never so advised him. However, petitioner admitted knowing that if he went to trial and was convicted of first degree murder the electric chair might have been his fate. Petitioner also admitted that he spoke with Mr. Norick about ten or fifteen times before the trial. Finally, petitioner admitted that he had discussed with his codefendant, who likewise pleaded guilty to second degree murder, the latter's plea before trial. Petitioner's codefendant Giles was likewise sentenced to 20 years to life upon his plea of guilty.

Two lawyers had been appointed to represent petitioner on his trial. One of these lawyers, Mr. Hebert F. Feuer testified on the hearing before Judge Christiana. Mr. Feuer testified that he had advised petitioner of the penalty for murder in the second degree in response to petitioner's questions about the possible penalty which Giles might receive upon his plea; that shortly after petitioner was indicted he had an extended conversation with him at which time petitioner gave him the name of an alibi witness; that he took a statement from this witness and gave it to petitioner's co-counsel; that he saw petitioner four of five times before the trial; and that it was he who had made the motion on behalf of petitioner to change the venue of the trial from New York County. This motion was granted. Mr. Feuer further testified that just before trial was to commence petitioner told him that he desired to plead guilty. Feuer then advised Mr. Norick who proceeded from there. Mr. Feuer could not testify as to what Mr. Norick allegedly said to petitioner at that time with regard to petitioner's written statement. Mr. Feuer also testified that petitioner had consistently maintained his innocence until the day of trial; consequently, he, Feuer, had never advised defendant to plead guilty prior thereto. However, after petitioner advised that he desired to plead guilty, Feuer testified that he advised petitioner to do so if he was in fact guilty and again advised him of the penalty for murder in the second degree.

Petitioner's co-counsel, Mr. Alfred Norick, who allegedly "coerced", or as petitioner testified "influenced", petitioner to plead guilty was ill at the time of the hearing before Judge Christiana. Petitioner's court appointed counsel on the hearing, Mr. Adolph Matties, suggested that the hearing be adjourned until Mr. Norick could testify or until he, Mr. Matties, could secure Mr. Norick's affidavit. The court granted an adjournment for the purpose of securing the affidavit and directed Mr. James C. Mosley, the District Attorney, to secure Mr. Norick's affidavit. In his affidavit, Mr. Norick alleged that when he first interviewed defendant, defendant asked him if he could "obtain a plea for him" and he informed petitioner that he would find out; that he interviewed petitioner "on from 10 to 15 occasions both in the New York Supreme Court and the Brooklyn House of Detention and on several occasions" he explained to petitioner the four degrees of homicide and their possible punishments. Mr. Norick denies in his affidavit that he told petitioner to plead guilty or what

the sentence would be. He added: "I never told him he would receive 20 to 25 years. I told him to write down what had happened concerning the commission of the crime and he did so. I asked him whether he was pleading guilty voluntarily of his own free will and he answered 'Yes.' I told him to write that down. I asked him whether or not anyone had forced him or threatened him to plead guilty and whether or not he was given any promise as to any sentence he might receive. He replied 'No.' and I told him to write that down. After he did, I asked him to read the statements and sign it if it was the truth. He read it and signed it."

Petitioner's co-defendant, Nathan Giles, testified on behalf of petitioner. He was questioned as to what he had heard Mr. Norick say to petitioner prior to petitioner's plea. On direct examination Giles testified: "I don't recall the actual substance, but I recall hearing him say 20 to 25 years when he leaned over." On cross-examination he testified: "I . . . it is not that I heard. It is . . . just snatches of it, I got. . . ." Giles also testified that in conversations between petitioner, himself, and their respective counsel before trial he had "made it understood that Martin didn't have anything to do with the crime." He acknowledged that he knew the maximum mandatory penalty for second degree murder was 20 years to life at the time of his plea. He and petitioner were in jail together in Columbia County for about two weeks prior to their pleas. Both defendants pleaded guilty on the same day, Giles pleading first.

After the hearing, Judge Christiana denied petitioner's motion to withdraw his plea of guilty and again sentenced him to the minimum mandatory penalty for murder in the second degree. The denial was affirmed by the Appellate Division of the Supreme Court, Third Department. Leave to appeal to the Court of Appeals was denied.

Petitioner claims that he should be granted a new hearing before this court.

He alleges that he did not get a full and fair hearing before Judge Christiana because the hearing was not recessed until Mr. Norick could appear for cross examination. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

■ This court holds that petitioner did receive a full and fair hearing in the state court. It was petitioner's attorney who suggested that Mr. Norick's statement be secured. He made no objection to the statement being secured by the District Attorney as the court directed. When the affidavit of Mr. Norick was filed with the court and the hearing before Judge Christiana resumed, petitioner was given an opportunity to read the affidavit before proceeding. He did not then request an adjournment until Mr. Norick could appear for cross examination. He offered no other evidence or witnesses. He then rested.

■ This court also holds that there is no evidence in the record from which it could conclude that petitioner's counsel improperly coerced or incompetently advised him with respect to his plea. McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). Petitioner's lawyers were ready to proceed to trial when petitioner decided to plead guilty. A panel had been summoned and the state had moved for trial. Mr. Feuer testified that a statement had been taken by him of petitioner's alibi witness before trial. Petitioner claimed on the hearing before Judge Christiana that he had additional witnesses. Mr. Feuer testified that petitioner gave him and Mr. Norick the names of other witnesses but that these witnesses could not be found. Petitioner did not deny this. He did not name any other prospective witnesses or give the substance of what his alibi witness would have testified to. When Giles was arrested he confessed and named petitioner as his accomplice. Therefore, complete reliance upon an effort by Giles to recant would not have been justified. Petitioner's counsel had secured a change of venue of the trial from New York County where the crime and all of its attendant publicity had oc-

curred. Petitioner admitted that he had seen Mr. Norick on many occasions prior to trial. There is no claim that petitioner's trial counsel were young, inexperienced criminal lawyers. Both counsel categorically denied that they had urged defendant from the beginning to plead guilty.

It appears that petitioner's claim that he was beaten into confessing the crime by the police is made for the first time in his present petition in this court. On the hearing before Judge Christiana neither petitioner nor his lawyer made any such claim. The pivotal claim was that petitioner had been coerced by his lawyer, Mr. Norick. Petitioner never claimed that Mr. Feuer coerced him into pleading guilty. Judge Christiana asked petitioner on the hearing whether he recalled being asked on the voir dire before his guilty plea was accepted whether he had been threatened or coerced into pleading guilty and he had replied in the negative. Petitioner replied that he did remember. Petitioner did not then claim that he had been beaten by the police and that this affected his plea. His lawyer made no such claim and did not seek to develop any such facts. McMann v. Richardson, *supra*, at 767, 90 S.Ct. at 1441; Chambers v. Florida, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716 (1940). Petitioner does not now claim that he advised either Mr. Feuer or Mr. Norick that he had been beaten by the police into confessing the crime and that they ignored this serious charge.

■ The Supreme Court in McMann v. Richardson, *supra*, established the criteria for determining when, upon a petition for a writ of habeas corpus in a federal district court, a counseled state prisoner who seeks to set aside his plea of guilty on the ground of coerced confession is entitled to a hearing thereon and relief if he proves his allegations. There the Court held that in such cases the counseled state prisoner must allege and prove more than the fact that his confession was coerced and that it motivated his plea; that is, he must allege and prove serious derelictions on the

part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act. The Court further ruled that, "Whether a guilty plea was entered before or after Jackson v. Denno, the question of the validity of the plea remains the same: was the plea a voluntary and intelligent act of the defendant?" (397 U.S. at 772, 90 S.Ct. at 1449, 25 L.Ed.2d 763). Petitioner's plea was a pre Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), plea. Such pleas were involved in McMann v. Richardson, *supra*. Petitioner by his own testimony revealed that his trial lawyers were aware of his confession to the police. He testified on the hearing that he kept asking his lawyers what evidence they believed the state had other than his confession. The effect of a coerced confession made to police more than a year before the plea and after consultation over the period of a year with two attorneys before the plea and at the time of the plea is much too attenuated to be given weight without more. Petitioner had an opportunity upon his hearing in the state court to prove that the coerced confession given the police had lasting effect but failed to do so. Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970); McMann v. Richardson, *supra*, Chambers v. Florida, *supra*.

■ An otherwise valid plea is not involuntary because induced by a defendant's desire to escape a possible death penalty. North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed. 2d 162 (1970); Parker v. North Carolina, *supra*; Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). The standard is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. North Carolina v. Alford, *supra*. There is nothing in the record before this court to suggest that petitioner's plea at the time was not such a choice.

■ Petitioner's present claim that he was not represented by counsel at

time of arraignment is belied by the record. Moreover, this claim was likewise waived by his subsequent guilty plea. McMann v. Richardson, *supra*.

This court holds that petitioner has failed to allege or prove that there was such serious dereliction on the part of his trial counsel with respect to his allegedly coerced confession and his counseled plea of guilty that a federal court should allow him to now plead anew seven years later. He is, therefore, not entitled to a hearing or the habeas corpus relief now sought.

The petition for a writ of habeas corpus is denied.[3]